IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| VAN HORN, METZ & CO., INC., | : | |
| *Plaintiff,* | : | |
|  | : | |
| v. | : | CIVIL NO. 23-3596 |
|  | : | |
| PNC FINANCIAL SERVICES GROUP, INC., | : | |
| *Defendant.* | : | |
|  | : | |
|  | : | |

Scott, J.                                                                                                        March 31, 2025

## MEMORANDUM

Plaintiff Van Horn, Metz & Co. ("Van Horn") brings this action against Defendant PNC Financial Services Group, Inc. ("PNC"), alleging that PNC aided and abetted the fraud and embezzlement perpetrated by Anthony Crisafulli ("Crisafulli"), one of Van Horn's former employees. Currently pending before the Court is Defendant's Motion to Dismiss the Amended Complaint (ECF No. 17), which is fully briefed and ripe for disposition. For reasons set forth below, the Court grants Defendant's motion to dismiss with prejudice.

1

## I. BACKGROUND

On March 15, 2024, the Court dismissed Plaintiff's Complaint without prejudice. ECF No. 14. On April 12, 2024, Van Horn filed an Amended Complaint, which PNC moved to dismiss on April 26, 2024. ECF Nos. 16, 17. On May 10, 2024, Van Horn filed its Response in Opposition to the Motion to Dismiss. ECF No. 18. On May 24, 2024, PNC filed its Reply. ECF No. 19. The Court assumes familiarity with the factual background as presented in its previous Memorandum granting Defendant's Motion to Dismiss. ECF No. 13 at 1-2. Here, the Court briefly reviews additional factual material as relevant to the Amended Complaint.

Van Horn is a specialty raw materials distributor headquartered in Conshohocken, Pennsylvania. Van Horn alleges that Crisafulli—Van Horn's "longtime and trusted" bookkeeper and controller—stole more than $4.5 million from 2012 to 2020 by transferring money in Van Horn bank accounts at PNC to Crisafulli's personal accounts at JPMorgan Chase. ECF 15 ¶¶ 7, 20, 27. According to Van Horn, PNC aided and abetted Crisafulli's scheme by failing to verify whether Crisafulli was authorized to make such transfers and by failing to stop any of the fraudulent activity throughout the eight-year embezzlement scheme, including through PNC's antifraud and risk monitoring programs. *See, e.g.*, ECF 15 ¶¶ 47, 51, 137-48.

Van Horn's substantive additions to its pleadings in the Amended Complaint are threefold. First, Van Horn adds more detail regarding Crisafulli's fraudulent transactions, including a table that lays out the quantum of Crisafulli's unauthorized transfers per year and another table that identifies payments from Van Horn's PNC accounts to Crisafulli's JPMorgan Chase credit cards. ECF No. 15 ¶¶ 23, 48. Second, Van Horn adds more detail about PNC's obligations under federal law and about PNC's programs designed to detect and deter money laundering and fraud. *See, e.g.*, ECF No. 15 ¶¶ 63-69, 79-81, 96-111. Third, Van Horn alleges that PNC corresponded with

Crisafulli as part of PNC's efforts to comply with its due diligence and Know-Your-Customer ("KYC") requirements, and that such correspondence included Crisafulli's refusal to adopt a protocol that would have obligated Van Horn's President and Chief Executive Officer to review and approve all payments from Van Horn PNC bank accounts. ECF No. 15 ¶¶ 112-19.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the plausibility standard does not demand a showing of a probability of relief, it must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The Court employs a three-step process to evaluate a motion to dismiss for failure to state a claim for relief. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the Court articulates the elements of the claim. *Id.* Second, the Court reviews the complaint but disregards any "formulaic recitation of the elements of a . . . claim or other legal conclusion" and any allegations that "are so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* at 327-28 (internal quotation marks and citations omitted). Third, the Court evaluates the plausibility of the remaining allegations while assuming the truth of the well-pleaded allegations, construing them in the light most favorable to plaintiff, and drawing all reasonable inferences in plaintiff's favor. *Id.* at 328.

## III. DISCUSSION

To state a claim for aiding and abetting fraud, a plaintiff must sufficiently allege: (1) the existence of fraud by a third party; (2) that defendant had "actual knowledge of the fraud;" and (3)

that defendant provided "substantial assistance or encouragement" to the party committing the fraud. *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 89 (Pa. 2023).

### A. Actual Knowledge

To sufficiently plead actual knowledge, Van Horn must allege facts that do more than show PNC's putative negligence or that PNC "should have known of [Crisafulli's] wrongful conduct but did not." *Id.* at 92. After setting aside the conclusory allegations of actual knowledge in the Amended Complaint, there is not enough factual meat on the Complaint's bone to survive the motion to dismiss.

Assuming the truth of the well-pleaded allegations and construing them in Van Horn's favor, the Court finds that, at most, the Amended Complaint reasonably permits the inference that PNC should have known about the fraud, not that PNC actually knew about it. Plaintiff's additional specificity regarding the quantum and frequency of the fraudulent transactions only increases the plausibility that fraud occurred—which no parties have disputed for present purposes—but it does not increase the plausibility that PNC actually knew about it.

Van Horn's additional details about PNC's legal obligations regarding risk monitoring and compliance is just digging deeper in the same hole that led to the dismissal of Van Horn's original complaint. *See* ECF No. 13 at 4. Those types of allegations do not sufficiently plead actual knowledge. In other words, it is unreasonable—and therefore impermissible for this Court—to infer that PNC actually knew about the fraud strictly because PNC's risk monitoring and compliance programs should have detected the fraud.

Van Horn's allegations about the email correspondence between Crisafulli and PNC come closer to sufficiently alleging actual knowledge, but they still falter. PNC allegedly sought to perform due diligence and discharge its KYC duties, including through a proposal in which Van

Horn's CEO would be required to review and approve all payments sent from Van Horn's PNC business accounts. ECF No. 15 ¶ 117. But, as Van Horn notes, Crisafulli served as PNC's point of contact, and he refused to adopt that proposal "for obvious reasons (i.e., it would put an end to Crisafulli's fraudulent scheme)." ECF No. 15 ¶ 119. Under the facts alleged regarding this email correspondence, it is simply not plausible and not reasonable to infer that PNC had actual knowledge of the fraud. As Defendant points out, it is unreasonable to assume that, if PNC had actual knowledge of the fraud, it would ask Crisafulli, the alleged fraudster, to implement the protocol that would eliminate the fraud. *See* ECF No. 19 at 4.

The allegations here are distinct from cases where courts have found sufficient allegations of actual knowledge in aiding and abetting fraud claims. In *Downz v. Citizens Bank, N.A.*, 2024 WL 4829719, at *5 (E.D. Pa. Nov. 19, 2024), the court denied the motion to dismiss the aiding and abetting fraud claim, reasoning that the "two prior unauthorized fraudulent deposits" into Plaintiff's checking account that were "flagged and returned" by Citizens Bank were facts sufficient to plausibly allege that Citizens Bank had actual knowledge of the fraud. And PNC's knowledge that there were transfers from Van Horn's PNC business accounts to Crisafulli's personal Chase accounts is not tantamount to actual knowledge of fraud. As explained in the prior Memorandum, using company funds to make personal credit card payments is not inherently unusual. ECF No. 33 at 4-5; *see also DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co.*, 388 F.3d 886, 895 (D.C. Cir. 2004) (observing that defendant "had no reason to suspect fraud because it is not unusual for employers to pay the credit card debts of their employees"); *Hartford Acc. & Indem. Co. v. Am. Exp. Co.*, 542 N.E.2d 1090, 1095 (1989) (describing an employee's payment of personal credit card using company checks as an "innocuous act" because "the use of

corporate checks to pay employees' debts is an every day occurrence in the business world") (cleaned up).

In *Hedden v. Navy Federal Credit Union*, 2024 WL 4609585, at *2 (E.D. Pa. Oct. 29, 2024), Hedden sufficiently alleged aiding and abetting fraud where Hedden alleged that she had called the credit union to report that she had been scammed and to request that the credit union cancel the pending transfer of funds (which it ultimately failed to do). The court specifically "credit[ed] Hedden's argument that once Hedden called Navy Federal, it had actual knowledge that the Loan was fraudulently obtained, and nonetheless processed the disbursement and transfer." *Id.* at *6. Van Horn makes no similar allegations that Van Horn (or anyone else) contacted PNC about the suspected fraud, which may have sufficed to plausibly allege that PNC had actual knowledge of the fraud.

### B. Substantial Assistance or Encouragement

Van Horn has failed to sufficiently plead substantial assistance or encouragement of Crisafulli's fraud. Van Horn alleges that PNC aided and abetted Crisafulli's fraud by "allowing [the illicit transfers] to continue over a course of eight years, and allowing Crisafulli to steal in excess of $3.5 million of Van Horn Metz's money." ECF No. 15 ¶ 145. Additionally, Van Horn suggests that the third prong, providing substantial assistance or encouragement, is also entailed by satisfying the actual knowledge prong. ECF No. 15 ¶ 146 ("PNC provided substantial assistance and encouragement to Crisafulli . . . because it had actual knowledge and/or willful blindness and/or intentional ignorance of Crisafulli's fraudulent wire transfers and failed to stop it."). Neither of these approaches plausibly gives rise to an entitlement to relief.

First, PNC's alleged failure to recognize or stop the fraud does not amount to substantial assistance or encouragement. Under the facts alleged, such failure is too slight to amount to "substantial" assistance. *See Panthera Rail Car LLC v. Kasgro Rail Corp.*, 2013 WL 4500468, at

\*16 (W.D. Pa. Aug. 21, 2013) (granting a motion to dismiss an aiding and abetting fraud claim where litigant used "the phrase 'substantial assistance' . . . in a conclusory manner" and where the complaint was "without a satisfactory quantum of factual support" regarding the existence of substantial assistance); *cf. Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369, 384 (E.D. Pa. 2018) (denying motion for summary judgment because a trier of fact could find substantial assistance or encouragement under a theory of *respondeat superior*).

Second, Van Horn's entailment argument fails as a matter of law and logic. Van Horn's approach collapses what are two distinct elements of the cause of action into one: it cannot be the case that satisfying one element of an aiding and abetting fraud claim under Pennsylvania law functionally satisfies a second, conceptually distinct element. Indeed, *Marion* makes this point clearly, noting that substantial assistance and encouragement prong is "*in addition*" to showing that "a party must have actual knowledge of the fraud." *Marion*, 288 A.3d at 87 (emphasis added).

## IV.    CONCLUSION

Instead of alleging new facts and new information sufficient to overcome the defects found in the original Complaint, Plaintiff opted to deepen its allegations concerning the same facts that this Court has already found insufficient to state a claim for aiding and abetting fraud under Pennsylvania law. Accordingly, and for reasons stated above, Defendant's motion to dismiss for failure to state a claim is granted.

An appropriate Order will be entered.